THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KYLIE DIDONATO, ) | |
| ) | |
| Plaintiff, ) | No. 19 C 2737 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| TIM PANATERA and ) | |
| CITY OF CHIACGO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kylie DiDonato brings this suit against paramedic/emergency medical technician ("EMT") Tim Panatera and the City of Chicago based on an alleged incident in Panatera's home. DiDonato claims that after she slipped in a puddle of water in Panatera's bathroom and hit her head on the bathtub, Panatera failed to provide her with proper medical care and instead sexually assaulted her while she was in and out of consciousness. Panatera and the City of Chicago separately move to dismiss DiDonato's Section 1983 claim (Count IV) and her claim for willful and wanton misconduct (Count V) under Rule 12(b)(6).

For the reasons stated here, the Court grants the City's [Dkt. 17] and Panatera's [Dkt. 19] motions to dismiss as to the Section 1983 claims only. DiDonato's Section 1983 claims are dismissed without prejudice as to both defendants. DiDonato may amend her complaint consistent with this Opinion, if possible, within 21 days of the publication of this Opinion.

### BACKGROUND

The following factual allegations are taken from the complaint (Dkt. 1-1) and are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Defendant Tim Panatera is a paramedic/EMT employed by the City of Chicago. (Dkt. 1-1 ¶ 8.) On March 18, 2018, Panatera invited Plaintiff Kylie DiDonato to his home in Chicago. (*Id.* ¶ 10-11.) Either late that evening or sometime after midnight, DiDonato slipped and fell in a puddle of water on Panatera's bathroom floor and hit the back of her head on the bathtub. (*Id.* ¶ 12-13, 15, 27.) DiDonato lost a "considerable" amount of blood and suffered a concussion from the fall. (*Id.* ¶ 15.)

Panatera entered the bathroom just after DiDonato fell, saw her bleeding, and said, "holy shit, that's bad." (*Id.* ¶ 20.) Panatera picked DiDonato up from the floor, placed her in the bathtub to rinse the blood from her head, and wrapped her head with an unsterile bathroom towel. (*Id.* ¶ 21.) Panatera did not provide DiDonato with any further medical assistance—he did not call 911, contact his EMT unit, or take her to the emergency room for treatment. (*Id.* ¶¶ 21-25.)

Panatera then helped DiDonato into his bed. (*Id.* ¶ 26.) DiDonato was barely conscious. (*Id.* ¶ 28.) Panatera "attempt[ed] to mount her in a sexual manner," at which point she lost consciousness. (*Id.*) Panatera woke DiDonato up the next morning. (*Id.* ¶ 29.) They were still in his bed. (*Id.*) While DiDonato was still in pain, groggy, and covered in dried blood, Panatera sexually assaulted her and had non-consensual sexual intercourse with her. (*Id.*) DiDonato lost consciousness again and stayed in Panatera's bed until the late afternoon, when he woke her up and told her it was time to leave. (*Id.* ¶ 30.) Panatera collected DiDonato's belongings, put a hat on her head to cover the dried blood, and drove her to her home in the west suburbs. (*Id.* ¶ 31.) When DiDonato got home, she contacted a friend who came over immediately and took her to the Adventist Hinsdale Hospital emergency room. (*Id.* ¶ 33-34.) DiDonato was treated for head trauma and a concussion. (*Id.* ¶ 34.)

The day DiDonato visited Panatera's home, she heard him having a phone conversation with his work partner about work-related issues. (*Id.* ¶ 18.) Panatera was "on call" for his job as a Chicago EMT at the time of the call. (*Id.* ¶ 19.)

DiDonato filed suit against Panatera in the Circuit Court of Cook County, Illinois on December 7, 2018. (*See* Dkt. 17.) She filed an amended complaint on March 18, 2019, adding the City of Chicago as a defendant. (Dkt. 1-1.) She brings claims against Panatera for negligence (Count I), assault (Count II), and battery (Count III), and claims against both Panatera and the City of Chicago for deliberate indifference under 42 U.S.C. § 1983 (Count IV) and willful and wanton misconduct (Count V). The City of Chicago timely removed the case to this court on the basis of federal question jurisdiction. *See* 28 U.S.C. § 1441(a); 1446. Panatera and the City of Chicago now separately move to dismiss the Section 1983 and willful and wanton misconduct claims under Rule 12(b)(6).

**LEGAL STANDARD**

To overcome a Rule 12(b)(6) motion, "a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court accepts the complaint's factual allegations as true and draw all permissible inferences in Plaintiffs' favor. *Id.* However, "[w]hile a plaintiff need not plead 'detailed factual allegations' to survive a motion to dismiss, she still must provide more than mere 'labels and conclusions or a formulaic recitation

of the elements of a cause of action' for her complaint to be considered adequate under [Rule] 8."
*Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

In her Section 1983 claim, DiDonato alleges that Panatera intentionally failed to provide her with necessary medical care in violation of her constitutional rights. (Dkt. 1-1 ¶ 47.) Both defendants argue that DiDonato's claim fails because there is generally no constitutional right to medical care and DiDonato has failed to plead facts showing that she qualifies for either of the two exceptions to that general rule. Panatera separately argues that DiDonato's claim fails because he was not acting under color of state law during the alleged events. The City separately argues that even if DiDonato states a Section 1983 claim against Panatera, the claim against the City should still be dismissed because municipalities cannot be held liable under Section 1983 for the actions of their employees.

**I.** *DeShaney* **and its Exceptions**

To bring a claim under Section 1983, DiDonato must establish that she was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed by a person acting under the color of state law. *Rodriguez v. Plymouth Ambulance Servs.*, 577 F.3d 816, 822 (7th Cir. 2009). The government generally has no constitutional duty to provide medical or rescue services to its citizens. *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 916 (7th Cir. 2015) (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)). There are two exceptions to this general rule: "First, the state is duty-bound to protect individuals with whom it has a special relationship; that is, when a state has custody over a person, it must protect him because no alternate avenues of aid exist. Second, the so-called state-created danger exception provides that liability exists when the state affirmatively places a particular

4

individual in a position of danger the individual would not otherwise have faced." *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (internal quotations omitted) (citing *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998)); *see also Doe*, 782 F.3d at 916-17.

DiDonato argues that she falls under the custody exception. (Dkt. 22 at 9; Dkt. 23 at 7-8.) The rationale behind this exception "is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." *DeShaney*, 489 U.S. at 200; *see also Stevens v. Umsted*, 131 F.3d 697, 702 (7th Cir. 1997). "[I]t is the State's *affirmative act of restraining* the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause." *Id*. (emphasis added); *see also Salazar v. City of Chicago*, 940 F.2d 233, 237 (7th Cir. 1991) (if a person is "free to leave and seek help on his own," he is not in custody for purposes of the *DeShaney* exception).

Here, DiDonato's claim falls short because she does not allege that Panatera engaged in a "restraint of personal liberty" like those mentioned in *DeShaney*, which "all require some state action that applies force (or the threat of force) and show of authority made with the intent of acquiring physical control." *Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005) (citing *DeShaney*, 489 U.S. at 200). It is true that DiDonato alleges she was in and out of consciousness throughout the alleged events, so the Court can reasonably infer that she was unable to leave Panatera's house and seek help on her own. But her inability to leave and seek help resulted from her fall and head injury, not from any affirmative act, show of force, or show of authority by

Panatera. In short, DiDonato alleges that it was her head injury, not Panatera, that prevented her from leaving. DiDonato has not alleged that she was in Panatera's custody and so she cannot proceed under that *DeShaney* exception. *See Jackson*, 429 F.3d at 591 (unconscious patient was not in paramedics' custody after being placed in an ambulance where paramedics did not restrain him in any way, and his "liberty was 'constrained' by his incapacity, [which] was in no way caused by" the paramedics); *Doe v Vill. of Arlington Heights*, No. 11 C 2764, 2012 WL 1068787, at *8 (N.D. Ill. March 29, 2019), *aff'd on other grounds*, 782 F.3d 911 (7th Cir. 2015) (plaintiff was not in custody where she was never "physically restrained by the state" and she did not allege that the defendant "did anything to cause her intoxication, which limited her capacity to seek help on her own").

DiDonato also argues (in one sentence, without a single case citation) that she was injured "because of danger created by Panatera keeping her in his premises for his own prurient purposes." (Dkt. 22 at 9.) If DiDonato is attempting to argue that she qualifies for the state-created danger exception, she has effectively waived this argument by failing to develop it at all. *See, e.g.*, *United States v. Collins*, 796 F.3d 829, 836 (7th Cir. 2015) (single-sentence argument that is "unsupported" and "undeveloped" is "an afterthought . . . and is deemed waived"). Because DiDonato fails to plead facts showing that either of the exceptions to *DeShaney* applies here, her Section 1983 claim fails as to both the City and Panatera.

## II.  Acting Under Color of State Law

Panatera argues that DiDonato's Section 1983 claim fails for the additional reason that DiDonato has not pleaded facts showing that Panatera was acting under color of state law during the alleged events. "Not every action by a state official or employee is to be deemed as occurring under color of state law; rather, action is taken under color of state law when it involves a misuse

of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010) (internal quotations and citations omitted). "A public employee's acts occur under color of state law when they relate to official duties." *Luce v. Town of Campbell, Wisc.*, 872 F.3d 512, 514 (7th Cir. 2017). "Section 1983 does not cover disputes between private citizens, even if one happens to be an officer." *Plaats v. Barthelemy*, 641 F. App'x 624, 626-27 (7th Cir. 2016).

According to DiDonato, Panatera was acting under color of state law because he was "on call" when she was injured and because he attempted to treat her headwound, which is something a paramedic would do in the normal course of their duties. (Dkt. 22 at 8-9, Dkt. 23 at 6-7.) First, as Panatera points out, that is not exactly what the complaint alleges. DiDonato alleges that Panatera had a phone call with his work partner "on or about March 18," and that he was on call for his job as a paramedic "at the time of the [phone] call." (Dkt. 1-1 ¶¶ 18-19.) DiDonato alleges she slipped and fell in the "late evening [of] March 18 or very early morning [of] March 19." (*Id.* ¶ 27.) She does not allege what time on March 18 the phone call took place, nor does she allege that Panatera was on call for his paramedic job at the time she slipped and fell.

Even if the Court were to infer from these allegations that Panatera was on call when DiDonato was injured, that does not end the inquiry of whether he was acting under color of state law. "The question whether a police officer," for instance, "acted under color of state law is not answered by whether the officer was on or off duty at the time." *Lyons v. Adams*, 257 F. Supp. 2d 1125, 1132 (N.D. Ill. 2003). "Instead, the essential inquiry is whether the police officer's actions related in some way to the performance of a police duty." *Id.* (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1517 (7th Cir. 1990)); *see also Pickrel v. City of Springfield, Ill.*, 45 F.3d 1115, 1118 (7th Cir. 1995) ("Deciding whether a police officer acted under color of state law should turn

7

largely on the nature of the specific acts the police officer performed, rather than on merely whether he was actively assigned at the moment to the performance of police duties.")

DiDonato argues that Panatera was "providing medical assistance" when he wrapped her head with a towel and moved her from the bathtub to his bed, and that providing medical assistance is Panatera's exact duty as a paramedic. Panatera counters that he was "off duty, in his own home, entertaining a guest . . . and even in bed and sleeping" during the alleged events—actions which are not related to his state authority as a paramedic. He also points out that DiDonato repeatedly alleges that he, in fact, *did not* provide her with necessary medical treatment (*see, e.g.*, Dkt. 1-1 ¶¶ 47-48) and argues that she cannot have it both ways—either he was administering medical treatment or he wasn't, but she can't allege both.

Neither party's formulation gets it entirely right. Panatera's only act related to his paramedic duties was wrapping DiDonato's head wound in a towel. Treating a bleeding person's wound is exactly the sort of thing a paramedic does as part of his official duties. So that is the only action Panatera took that could be alleged to be under color of state law, at least as set forth in DiDonato's complaint. But that discrete act is not the basis of DiDonato's Section 1983 claim against Panatera. The thrust of DiDonato's claim is that Panatera failed to do anything *more* than wrap her head in a towel. She explicitly alleges that Panatera denied her proper medical care by failing to call 911 or to take her to a medical facility for emergency care and instead waiting 12 hours before driving her home. (Dkt. 1-1 ¶¶ 46-48.) Standing by and doing nothing makes Panatera more like a bystander than a paramedic undertaking his duties, and actions unrelated to a state actor's official duties are not taken under color of state law. *See, e.g.*, *Cole v. City of Chicago*, No. 06 C 4704, 2008 WL 68687, at *3-4 (N.D. Ill. Jan. 4, 2008) (on-duty paramedics who stood by and watched while their colleague assaulted a patient "were not performing any paramedic

duties" and thus were not acting under color of state law); *see also Plaats*, 641 F. App'x at 627 (police officer who did not identify himself and was wearing street clothes when he allegedly attacked plaintiff to settle a personal dispute did not "use[] his government position and resources or purport[] to enforce any law" and thus was not acting under color of state law); *Wilson*, 624 F.3d at 394 (alderman was not acting under color of state law when he beat a man after a parking dispute because enforcing parking laws was not related to his purely legislative aldermanic duties); *Latuszkin v. City of Chicago*, 250 F.3d 502, 505-06 (7th Cir. 2001) (police officer was not acting under color of state law when he drove drunk in personal vehicle, did not "display[ ] any police power," and did not "possess[ ] any indicia of his office" at time of accident). DiDonato has alleged enough, at this stage, to show that Panatera acted under color of state law when he wrapped her head in a towel. But that action is not the basis of her Section 1983 claim, so her claim fails on this ground as well.

### III. The City's Liability for Panatera's Actions

DiDonato concedes that her Section 1983 claim against the City should be dismissed because municipalities are not vicariously liable under Section 1983 for their employees' actions. *Connick v. Thompson*, 563 U.S. 51 (2011); *see* Dkt. 22 at 10. She asks, however, that the claim be dismissed without prejudice so she can seek discovery about the training the City provided Panatera and attempt to bring a claim against the City under Section 1983 based on its failure to adequately train Panatera. *See* Dkt. 22 at 10 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)). She also notes that she attempted to obtain such discovery from the City while the case was in state court and that her motion was denied. The Court will dismiss the Section 1983 claim against the City without prejudice, but its ruling stops there—whether DiDonato should receive the discovery she seeks is a matter for another day.

## CONCLUSION

For the reasons stated here, the Court grants the City's [Dkt. 17] and Panatera's [Dkt. 19] motions to dismiss as to the Section 1983 claims only. DiDonato's Section 1983 claims are dismissed without prejudice as to both defendants. DiDonato may amend her complaint consistent with this Opinion, if possible, within 21 days of the publication of this Opinion. Because the Court is dismissing DiDonato's only federal claim, the Court will defer ruling on the motions to dismiss the willful and wanton misconduct claims (Count V) pending review of DiDonato's amended complaint. If DiDonato successfully brings a federal claim next time, then the Court will consider motions to dismiss any state-law claims. If DiDonato chooses not to amend her complaint, or otherwise fails to state a Section 1983 claim again, the Court will decline to exercise supplemental jurisdiction over DiDonato's state-law claims and the case will be remanded back to state court. *See* 28 U.S.C. § 1367(c)(3).

_____
Hon. Virginia M. Kendall
United States District Judge

Date: August 20, 2019