IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KYLIE DIDONATO, | ) |
| | ) |
| Plaintiff, | ) No. 19 C 2737 |
| | ) |
| v. | ) Judge Virginia M. Kendall |
| | ) |
| TIM PANATERA and | ) |
| CITY OF CHICAGO, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This is Plaintiff Kylie DiDonato second attempt to assert a constitutional claim against paramedic/emergency medical technician ("EMT") Tim Panatera and the City of Chicago for a head injury that occurred in Panatera's bathroom. DiDonato alleges that after suffering the head injury, Panatera failed to deliver appropriate medical care and sexually assaulted her while she was in and out of consciousness. The Court originally granted Defendants' motion to dismiss because DiDonato failed to establish a Section 1983 claim—her jurisdictional link to federal court . (Dkt. 34). The Court granted DiDonato leave to amend, which she did. (Dkt. 37). Defendants have now moved to dismiss DiDonato's Second Amended Complaint, again arguing that Plaintiff has failed to state a federal claim. (Dkt. 40, 43). Defendant City of Chicago separately moves to dismiss Panatera's willful and wanton misconduct claim. Defendant Panatera also argues that DiDonato has failed to comply with pleading

1

requirements and moves in the alternative to strike portions of DiDonato's Second Amended Complaint.

## BACKGROUND

The following factual allegations are taken from DiDonato's Second Amended Complaint (Dkt. 34) and are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Defendant Tim Panatera is a paramedic/EMT employed by the City of Chicago. (Dkt. 37 ¶ 8). On or about March 18, 2018, DiDonato visited Panatera's home in Chicago, Illinois after Panatera drove her there. (*Id.* at ¶ 9). On the night of March 18, 2018, Panatera and DiDonato went into Panatera's hot tub. (*Id.* at ¶ 10). At some point, DiDonato left the hot tub, drying her feet and legs, to use Panatera's bathroom. (*Id.* at ¶ 10). While in the bathroom, DiDonato slipped and fell, hitting the back of her head on the bathtub. (*Id.*)

Panatera entered the bathroom after DiDonato fell, saw DiDonato bleeding on the floor next to the bathtub, and said "Holy shit, that's bad." (*Id.* at ¶ 11). Panatera then attended to DiDonato's injuries, picking her up and placing her in the bathtub to rinse the blood from her head. (*Id.* at ¶ 14). Panatera then lifted DiDonato from the bathtub, placed her on the floor, and wrapped her head with a non-sterile bathroom towel. (*Id.* at ¶ 18). DiDonato then attempted to crawl out of the bathroom. (*Id.* at ¶ 20). Panatera picked up DiDonato, took her to his bed, laid her upon it and then covered her with a bedsheet. (*Id.* at ¶ 21). DiDonato could not get out of

Panatera's bed or stand up. (*Id.* at ¶ 23). While immobile and unable to care for herself, DiDonato felt and then observed Panatera "assault her by attempting to mount her in a sexual manner to have non-consensual sexual intercourse with her." (*Id.* at ¶ 25). DiDonato then lost consciousness. (*Id.* at ¶ 25). The next morning on March 19, 2018, DiDonato was awakened by Panatera's body on top of hers, again having non-consensual intercourse with her. (*Id.* at ¶ 26).

Later in the afternoon of March 19, 2018, Panatera took a phone call from his work partner during which they allegedly "engaged in a work-related conversation." (*Id.* at ¶ 28). DiDonato alleges that Panatera was "on call" that day for his job as a paramedic. (*Id.* at ¶ 29).

DiDonato left Panatera's home that same afternoon, although she was unable to do so without assistance and did not recall putting her clothes on. (*Id.* at ¶ 31-32). DiDonato was in pain and groggy when Panatera helped her to his car, gathered her belongings, and put a fleece hat over her head before driving her to her home. (*Id.* at ¶ 33). DiDonato states that "from and after her injury and through the time that he drove her to her home, the only medical services provided to DiDonato by Panatera was to wrap the non-sterile towel around her head. (*Id.* at ¶ 34). When she got home, DiDonato contacted a friend who took her to the Adventist Hinsdale Hospital emergency room. (*Id.* at ¶ 36-37). DiDonato was treated for head trauma, concussion, and other related symptoms. (*Id.* at ¶ 38).

DiDonato filed suit against Panatera in the Circuit Court of Cook County on December 7, 2018. (*See* Dkt. 17). She filed an amended complaint on March 18,

3

2019, adding the City of Chicago as a defendant. (Dkt. 1-1). She brings claims against Panatera for negligence (Count I), assault (Count II), and battery (Count III), and claims against both Panatera and the City of Chicago for deliberate indifference under 42 U.S.C. § 1983 (Count IV) and willful and wanton misconduct (Count V). The City of Chicago timely removed the case to this Court. *See* 28 U.S.C. § 1441(a); 1446. Panatera and the City of Chicago now separately move to dismiss the Section 1983 claim under Rule 12(b)(6). Defendant City of Chicago moves under Rule 12(b)(6) to dismiss Panatera's willful and wanton misconduct claim. Defendant Panatera moves in the alternative to strike portions of Plaintiff's Second Amended Complaint pursuant to Rule 12(f).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court accepts the complaint's factual allegations as true and draws all permissible inferences in Plaintiffs' favor. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However,

4

"[w]hile a plaintiff need not plead 'detailed factual allegations' to survive a motion to dismiss, she still must provide more than mere 'labels and conclusions or a formulaic recitation' of the elements of a cause of action' for her complaint to be considered adequate under [Rule] 8." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

Defendants previously moved to dismiss DiDonato's claims and this Court granted that motion for failure to plead a Section 1983 claim, but gave leave to amend the complaint, which DiDonato timely did. (Dkt. 34). While DiDonato alleges new facts in her Second Amended Complaint, the basis of her Section 1983 claim remaining the same. DiDonato alleges that Panatera intentionally failed to provide her with necessary medical care in violation of her constitutional rights, although she does not name which constitutional article or amendment has been violated. (Dkt. 37 at ¶ 61). Both Defendants argue that DiDonato's claim fails as there is generally no constitutional right to medical care and Plaintiff has failed to plead sufficient facts showing that she qualifies for either of the two exceptions to this rule. Panatera separately argues that there was no state-created danger and that Panatera was not acting under color of state law during the alleged events.

5

## I. The *DeShaney* Exceptions

The Court provides only a brief summary of the *DeShaney* exceptions as the case law remains the same from the first Memorandum and Order. (Dkt. 34 at 4-5). To bring a Section 1983 claim, DiDonato must show that she was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed by a person acting under the color of state law. *Rodriguez v. Plymouth Ambulance Servs.*, 577 F.3d 816, 822 (7th Cir. 2009). The government generally has no constitutional duty to provide medical or rescue services to its citizens. *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 916 (7th Cir. 2015) (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)). There are two exceptions to this general rule: "First, the state is duty-bound to protect individuals with whom it has a special relationship; that is, when a state has custody over a person, it must protect him because no alternate avenues of aid exist. Second, the so-called state-created danger exception provides that liability exists when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." *Buchanan Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (internal quotations omitted) (citing *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998)); *see also Doe*, 782 F.3d at 916-17.

DiDonato does not plead any facts relating to the state-created danger exception but argues that she falls under the custody exception. (Dkt. 51 at 2; Dkt. 52 at 3). "[I]t is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar

6

restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause." *DeShaney*, 489 U.S. at 200; *see also Salazar v. City of Chicago*, 940 F.2d 233, 237 (7th Cir. 1991) (if a person is "free to leave and seek help on his own," he is not in custody for purposes of the *DeShaney* exception). Other examples where the custody exception triggers a constitutional duty includes foster children and pre-trial detainees. *Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005). Courts have reasoned that people in state custody "are unable to provide for basic human needs like food, clothing, shelter, medical care, and reasonable safety." *Kitzman-Kelley v. Warner*, 203 F.3d 454, 458 (7th Cir. 2000).

DiDonato's arguments that she was in custody remain largely the same as those in the Amended Complaint. (Dkt. 1-1). DiDonato states that she was in custody at several times. She states she was first in custody when, while attempting to crawl out of the bathroom, Panatera exerted control over her by picking her up and carrying her to his bed. (Dkt. 51 at 2-3; Dkt. 51 at 3). Next, DiDonato alleges that by covering her with a bedsheet, it was impossible for her to get out of bed and stand up, that she did not have access to her cell phone, nor could she get up to access it. *Id.* Additionally, DiDonato claims that she was in custody when Panatera was on top of her and assaulting her. (Dkt. 51 at 3; Dkt. 52 at 3).

Plaintiff must show that there was a state action applying force with the intent to obtain control over her person. *Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005). Here, DiDonato's claims fail because she does not show that there was an affirmative action on the part of the state that would meet the *DeShaney* exception.

Nothing she alleges indicates that she was incarcerated, institutionalized, or under a similar restraint of personal liberty. While DiDonato can show moments where she was restrained by Panatera, such as when she was picked up by Panatera or during her assault, these do not accord with precedent on state custody. *See Jackson*, 429 F.3d at 591 (unrestrained unconscious patient placed in paramedics ambulance was not in custody); *Doe v Vill. of Arlington Heights*, No. 11 C 2764, 2012 WL 1068787, at *8 (N.D. Ill. March 29, 2019), aff'd on other grounds, 782 F.3d 911 (7th Cir. 2015) (plaintiff who was never "physically restrained by the state" was not in custody). DiDonato fails to show that she was under a restraint of personal liberty similar to being incarcerated or institutionalized. *Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005).

As with the Amended Complaint, the heart of this claim is that it was DiDonato's head injury that incapacitated her and not an affirmative action on the part of the State. (Dkt. 34 at 5). DiDonato alleges that she was unconscious at times as a result of her head trauma, so the Court accepts that she could not easily leave Panatera's home or seek help. Yet it was her head injury that made her unable to leave or seek help, not any affirmative act, show of force, or show of authority by the state. *See Jackson*, 429 F.3d at 591 (unconscious patient was not in paramedics' custody after being placed in an ambulance where paramedics did not restrain him in any way, and his "liberty was 'constrained' by his incapacity, [which] was in no way caused by" the paramedics); *Doe v Vill. of Arlington Heights*, No. 11 C 2764, 2012 WL 1068787, at *8 (N.D. Ill. March 29, 2019), aff'd on other grounds, 782 F.3d 911

8

(7th Cir. 2015) (plaintiff was not in custody where she was never "physically restrained by the state" and she did not allege that the defendant "did anything to cause her intoxication, which limited her capacity to seek help on her own").

Because DiDonato has failed to plead sufficient facts to show she was in custody, this prong of the *DeShaney* exception is not met, and her claim therefore fails.

## II. Acting Under Color of State Law

Panatera separately argues that DiDonato's Section 1983 claim fails as DiDonato has not pleaded facts to show that Panatera was acting under color of state law during the alleged acts. "Not every action by a state official or employee is to be deemed as occurring under color of state law; rather, action is taken under color of state law when it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010) (internal quotations and citations omitted). "A public employee's acts occur under color of state law when they relate to official duties." *Luce v. Town of Campbell*, Wisc., 872 F.3d 512, 514 (7th Cir. 2017). "Section 1983 does not cover disputes between private citizens, even if one happens to be an officer." *Plaats v. Barthelemy*, 641 F. App'x 624, 626-27 (7th Cir. 2016); *see also Wilson*, 624 F.3d at 394 (a private citizen is not liable under Section 1983 unless the citizen becomes a public officer pro tem or conspires with a public employee to deprive a person of his constitutional rights).

DiDonato alleges that Panatera was acting under color of state law because he engaged in a work-related call which "presumed he was on-call at the time." (Dkt. 51 at 3; Dkt. 52 at 2). Additionally, DiDonato alleges that in performance of his official duties, Panatera "provided medical assistance to DiDonato by wrapping her head in a towel." (Dkt. 51 at 4; Dkt. 52 at 2-3). She further claims that Panatera was "acting through his official duties as a paramedic when he first determined the severity of her injuries by stating 'Holy shit, that is bad."[1] (Dkt. 52 at 3).

Further, the Court previously noted that even if the Court were to infer from the allegations that Panatera was on call when DiDonato was injured, that does not end the inquiry of whether he was acting under color of state law. (Dkt. 34 at 7). Therefore, although in her Second Amended Complaint DiDonato has added additional facts about the timing of the work-related call Panatera received, this does not resolve the question of whether he was acting under the color of state law. (Dkt. 51 at 3; Dkt. 52 at 2)

Again, the only discernable act that DiDonato has alleged that relates to Panatera's duties as a paramedic is that he wrapped DiDonato's head wound in a towel. As stated previously by the Court, treating a bleeding person's wound is the sort of thing a paramedic does as part of his official duties. (Dkt. 34 at 8). Opposed to what DiDonato argues, however, Panatera's stating "Holy shit, that is bad" does

---

[1] DiDonato, in her response to Panatera's motion to dismiss, alleges additional facts from the Second Amended Complaint to add that Panatera left DiDonato on the bathroom floor and that he began exiting the bathroom without her when she told him "This is bad, I need help," to which Panatera replied "It's not that bad, you will be okay." (Dkt. 52 at 5). DiDonato does not state whether she believes this was also an official duty, although it tends to undermine Plaintiff's allegation that Panatera's initial exclamation upon seeing her injury was an official act as paramedic if he contradicted himself moments later.

10

not constitute an official act of a paramedic as he was not officially diagnosing the severity of the injury. In any event, neither of these acts are the basis of DiDonato's Section 1983 claims. As this Court noted before, DiDonato's claim is that Panatera failed to do anything more than wrap her head in a towel and that he denied her proper medical care by failing to call 911 or taking her to a hospital for emergency care. (Dkt. 37 at 10; Dkt. 51 at 4; Dkt. 52 at 3). This inaction, as DiDonato has alleged it, relates more to Panatera's role as a bystander than a paramedic, and actions unrelated to a state actor's official duties are not taken under color of law. *See, e.g., Wilson*, 624 F.3d at 394 (alderman was not acting under color of state law when he beat a man after a parking dispute because enforcing parking laws was not related to his purely legislative aldermanic duties); *Latuszkin v. City of Chicago*, 250 F.3d 502, 505-06 (7th Cir. 2001) (police officer was not acting under color of state law when he drove drunk in personal vehicle, did not "display[ ] any police power," and did not "possess[ ] any indicia of his office" at time of accident); *Cole v. City of Chicago*, No. 06 C 4704, 2008 WL 68687, at *3-4 (N.D. Ill. Jan. 4, 2008) (on-duty paramedics who stood by and watched while their colleague assaulted a patient "were not performing any paramedic duties" and thus were not acting under color of state law); *Vanderline v. Brochman*, 792 F. Supp. 52 (N.D. Ill. 1992) (two firefighters who beat and handcuffed plaintiffs, showed them a badge and told plaintiffs they were "the law" were not acting under the color of state law). As DiDonato has failed to show that Panatera acted under color of state law, her Section 1983 claim fails on this ground.

### III. Remaining State-Law Claims

This leaves only state-law claims for negligence, assault, battery, and willful and wanton misconduct (Counts I-III; V). Having dismissed the only federal claims in this action, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims. 28 U.S.C. § 1367(c)(3); *see also Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016).

### CONCLUSION

For the reasons stated here, the Court grants the City's (Dkt. 40) and Panatera's (Dkt. 43) motions to dismiss as to the Section 1983 claims only. Count IV is dismissed with prejudice as to both Defendants. Counts I through III and Count V are dismissed without prejudice as the Court declines to exercise supplemental jurisdiction over them.

_____
Virginia M. Kendall
United States District Judge

Date: February 28, 2020